Citation Nr: AXXXXXXXX
Decision Date: 09/30/21 Archive Date: 09/30/21

DOCKET NO. 191023-103541
DATE: September 30, 2021

ORDER

Entitlement to a rating in excess of 50 percent for bipolar disorder is denied.

REMANDED

Entitlement to a total disability rating based on individual unemployability (TDIU) is remanded.

FINDING OF FACT

The severity, frequency, and duration of the Veteran's bipolar disorder did not more closely approximate occupational and social impairment with deficiencies in most areas.

CONCLUSION OF LAW

The criteria for entitlement to a rating in excess of 50 percent for bipolar disorder have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.126, 4.130, Diagnostic Code 9432.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty in the United States Air Force from November 1979 to December 1984.

A rating decision was issued under the legacy system in May 2018 and the Veteran submitted a timely notice of disagreement. In August 2019, the agency of original jurisdiction (AOJ) issued a statement of the case (SOC). The Veteran opted the claim into the modernized review system, also known as the Veterans Appeals Improvement and Modernization Act of 2017 (AMA) by submitting an October 2019 VA Form 10182, Decision Review Request: Board Appeal, identifying the August 2019 SOC. Therefore, the August 2019 SOC is the decision on appeal. 

Initially, in the October 2019 VA Form 10182, Decision Review Request: Board Appeal, the Veteran elected the Hearing docket. However, in a June 2020 VA Form 10182, Decision Review Request: Board Appeal, the Veteran elected the Evidence Submission docket, requesting to switch to this docket. Importantly, the Board acknowledge receipt of the request to switch the doctor in November 2010, and informed the Veteran that "[b]ased on the new Board appeal review option you selected, your appeal has been placed on the Evidence Submission docket."

Therefore, the Board may only consider the evidence of record at the time of the August 2019 SOC, as well as any evidence submitted by the Veteran or his representative within 90 days following VA's November 2020 notice that the appeal has been switched to the Evidence Submission docket. 38 C.F.R. § 20.303(b)(2). 

Evidence was added to the claims file during a period of time when new evidence was not allowed. As the Board is deciding the claim of entitlement to a rating in excess of 50 percent for bipolar disorder, it may not consider this evidence in its decision. 38 C.F.R. § 20.300. The Veteran may file a Supplemental Claim and submit or identify this evidence. 38 C.F.R. § 3.2501. If the evidence is new and relevant, VA will issue another decision on the claim, considering the new evidence in addition to the evidence previously considered. Id. Specific instructions for filing a Supplemental Claim are included with this decision. As the Board is remanding the claims of entitlement to TDIU for further development, this additional evidence will be considered by the RO in the adjudication of those claims.

1. Entitlement to a rating in excess of 50 percent for bipolar disorder is denied.

The Veteran is seeking a higher rating for his service-connected bipolar disability. He believes that his condition is more disabling than currently rated. 

Under the General Formula for Mental Disorders (General Formula), the Board must conduct a "holistic analysis" that considers all associated symptoms, regardless of whether they are listed as criteria. Bankhead v. Shulkin, 29 Vet. App. 10, 22 (2017); 38 C.F.R. § 4.130. The Board must determine whether unlisted symptoms are similar in severity, frequency, and duration to the listed symptoms associated with specific disability percentages. Then, the Board must determine whether the associated symptoms, both listed and unlisted, caused the level of impairment required for a higher disability rating. Vazquez-Claudio v. Shinseki, 713 F.3d 112, 114-118 (Fed. Cir. 2013). 

The issue in this appeal is whether the Veteran's associated symptoms caused the level of impairment required for a disability rating of 70 percent or higher.

The Board concludes that the Veteran's symptoms did not cause the level of impairment required for a disability rating of 70 percent or higher. The Veteran's symptoms more closely approximated the symptoms associated with a 50 percent rating and resulted in a level of impairment that most closely approximated the level of impairment associated with a 50 percent rating.

A noncompensable rating is assigned when a mental condition has been formally diagnosed, but symptoms are not severe enough to either require continuous medication, or to interfere with occupational and social functioning.

A 10 percent rating is assigned when mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of occasional stress, or symptoms controlled by medication cause occupational and social impairment.

A 30 percent rating is assigned when symptoms such as depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, or mild memory loss (such as forgetting names, directions, or recent events), cause occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and normal conversation).

A 50 percent rating is assigned when symptoms such as flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; or difficulty in establishing and maintaining effective work and social relationships cause occupational and social impairment with reduced reliability and productivity.

A 70 percent rating is assigned when symptoms such as suicidal ideation; obsessional rituals which interfere with routine activities; intermittently illogical, obscure, or irrelevant speech; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting); or inability to establish and maintain effective relationships cause occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood.

A 100 percent rating is assigned for total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; or memory loss for names of close relatives, own occupation or own name.

VA treatment records, the April 2018 VA examination, and the Veteran's lay statements show that the Veteran's bipolar disorder was manifested by symptoms associated with a 30 percent rating (depressed mood, anxiety, panic attacks that occur weekly or less often, and chronic sleep impairment), symptoms associated with a 50 percent rating (flattened affect, impairment of short and long term memory, impaired judgement, impaired abstract thinking, disturbances in motivation and mood, and difficulty establishing and maintaining effective work and social relationships), and symptoms associated with a 70 percent rating (impaired impulse control and difficulty in adapting to stressful circumstances). 

The Board finds the level of impairment caused by the Veteran's symptoms more closely approximates the level associated with a 50 percent rating. The Veteran experienced occupational and social impairment with reduced reliability and productivity. VA treatment records prior to August 2019 reflect that the Veteran's bipolar disorder was not manifest by suicidal ideation; obsessional rituals which interfere with routine activities; intermittently illogical, obscure, or irrelevant speech; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; spatial disorientation; neglect of personal appearance and hygiene; or inability to establish and maintain effective relationships. No hallucinations, delusions, psychosis, or other impairment of thought processes were noted. The Veteran did not require psychiatric hospitalization and there was no evidence of any current substance abuse. 

While the Veteran did experience symptoms contemplated by a 70 percent ratingimpaired impulse control and difficulty adapting to stressful circumstancesthe evidence overall does not demonstrate the level of impairment associated with a 70 percent rating. As noted above, the Veteran's other remaining symptoms were either contemplated by or more consistent with a 50 percent rating. VA outpatient treatment records during the relevant appeal period reflect that the Veteran's condition was generally stable and had not changed much in many years, although the Veteran did report some occasional irritability and mood swings. In November 2017, the Veteran requested an increase in "mood stabilizer" medication, but in February 2018, reported that he was feeling calmer after an increase in divalproex. The April 2018 VA examination noted that the Veteran is married and has two children, one of whom lives with the Veteran and his spouse. The Veteran was unemployed during the period on appeal and reported that he spends his free time watching television, attending church, and hanging out. 

For the above reasons, entitlement to a rating in excess of 50 percent for bipolar disorder is denied. The evidence in this case is not so evenly balanced so as to allow application of the benefit-of- the-doubt rule. Gilbert v. Derwinski, 1 Vet. App. 49 (1990); 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102.

REASONS FOR REMAND

1. Entitlement to a total disability rating based on individual unemployability (TDIU) is remanded.

The issue of entitlement to TDIU is remanded to correct a duty to assist error that occurred prior to the August 2019 rating decision on appeal. 

Entitlement to a TDIU requires the presence of impairment so severe that it is impossible for the average person to follow a substantially gainful occupation. See 38 U.S.C. § 1155; 38 C.F.R. §§ 3.340, 3.341, 4.16. In reaching such a determination, the central inquiry is "whether the Veteran's service-connected disabilities alone are of sufficient severity to produce unemployability." Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993). Consideration may be given to the Veteran's level of education, special training, and previous work experience in arriving at a conclusion, but not to his age or to the impairment caused by non-service-connected disabilities. See 38 C.F.R. §§ 3.341, 4.16, 4.19.

A total disability evaluation may be assigned where the schedular evaluation is less than total when the disabled veteran is unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities, provided that, if there is only one such disability, this disability shall be ratable at 60 percent or more, or if there are two or more disabilities, there shall be at least one ratable at 40 percent or more and sufficient additional disability to bring the combined rating to 70 percent or more. 38 C.F.R. §§ 3.340, 3.341, 4.16(a). Here, the Veteran does not meet this criteria because he has a single service-connected disability rated as 50 percent disabling. 

However, where the veteran fails to meet the applicable percentage standards enunciated in 38 C.F.R. § 4.16 (a), an extra-schedular rating is for consideration where the veteran is unemployable due to service-connected disability. 38 C.F.R. § 4.16 (b); see also Fanning v. Brown, 4 Vet. App. 225 (1993).

If a claimant is found to be unemployable because of service-connected disabilities, but does not meet the percentage standards set forth in § 4.16(a), the rating authority should refer the matter to the director of the Compensation Service for extra-schedular TDIU consideration. 38 C.F.R. § 4.16 (b). A veteran is not required to show 100% unemployability; the question is whether he or she is unable to pursue a substantially gainful occupation. Roberson v. Principi, 251 F.3d 1378, 1385 (Fed.Cir.2001). Whether the veteran can actually find employment is not determinative, as the focus of the inquiry is on "whether the veteran is capable of performing the physical and mental acts required by employment." Van Hoose v. Brown, 4 Vet .App. 361, 363 (1993) (emphasis in original). Notably, the AMA amendments do not specifically revoke this procedural requirement and it is unclear whether lack of AOJ consideration of whether referral to the Director is warranted is either a pre-decisional duty to assist error or an "error by the agency of original jurisdiction in satisfying a regulatory or statutory duty, if correction of the error would have a reasonable possibility of aiding in substantiating the appellant's claim."

Notwithstanding, the aforementioned, the Board cannot consider entitlement to TDIU on an extra-schedular basis in the first instance, but it is required to ensure that all cases where there is evidence of unemployability due to service-connected conditions are referred to the Director for initial consideration under 38 C.F.R. § 4.16 (b). Bowling v. Principi, 15 Vet. App. 1 (2001). The Board has jurisdiction to review determinations by the Director. Anderson v. Principi, 18 Vet. App. 371 (2004).

The question to be asked is whether there is "sufficient evidence to substantiate a reasonable possibility that a veteran is unemployable by reason of his or her service-connected disabilities." Ray v. Wilkie, 31 Vet. App. 58, 66 (2019); see 38 C.F.R. § 4.16(b) (stating that, when submitting a veteran's case to the Director, "[t]he rating board will include a full statement as to the veteran's service-connected disabilities, employment history, educational and vocational attainment and all other factors having a bearing on the issue")."

Here, the Board finds that there is sufficient evidence for referral to the Director of the VA Compensation and Pension Service for extra-schedular consideration of entitlement to TDIU. 

The record reflects that the Veteran was last employed in 2008.

An April 2018 VA examiner stated that because of his service-connected bipolar disorder, the Veteran has difficulty attending to or is easily distracted from the task at hand, has difficulty maintaining concentration and focus on work over a period of time, tends to skip from one task to another without completing the prior task, and has significant difficulty remembering instructions and details of work assignments. The examiner also found that the Veteran has difficulty adapting to stressful circumstances, including work or a worklike setting, and difficulty establishing and maintaining effective work and social relationships. The Veteran also has impaired judgement and impulse control, as well as impairment of short and long-term memory. 

Also of record are a number of statements from P.G., a VA -nurse practitioner who has been providing therapy and medication management to the Veteran for many years. In September 2012, she noted that although the Veteran was currently stable with medication, at times he is unable to function and "would not do well with stress and the demands of employment." In August 2013, she opined that the Veteran has significant limitations in his ability to cope with normal work stress, function independently, understand and remember simple instructions, make simple work-related decisions, maintain attention to work tasks for up to two hours, sustain an ordinary routine without special supervision, and respond to changes in a work setting. She also found that he is limited in his ability to behave in an emotionally stable manner, interact with the public, accept instructions, respond to criticism, and perform at a peristent pace, and work in coordination with others. In April 2014, she affirmed that the Veteran's limitations were unchanged since August 2013. While these opinions are several years old, the record does not reflect any sustained improvement in the Veteran's condition since that time. 

Given the significant limitations on occupational functioning noted above, the Board finds that referral to the Director of VA Compensation and Pension Service for extra-schedular consideration of entitlement to TDIU is warranted. 

In remanding this matter, the Board makes no finding, implicit or otherwise, as to the credibility of the Veteran's assertions. Neither the Veteran's credibility nor any lack thereof should be presumed in this remand.

The matters are REMANDED for the following action:

1. The Veteran's claim for TDIU should be referred to the Director, Compensation and Pension Service for consideration of an extra-schedular evaluation. See 38 C.F.R. § 4.16 (b). 

 

YVETTE R. WHITE

Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board E.D. Anderson, Counsel

The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.